```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

----------------------------------------X

DR. REID, JA'MEZ JAHMEZ-JAMES ANTONIO,           **MEMORANDUM AND ORDER**

               Plaintiff,                        19-CV-1221

    -against-

UNITED STATES OF AMERICA,

               Defendant.

----------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

       Plaintiff Dr. Ja'mez Jahmez-James Antonio Reid ("plaintiff"), proceeding *pro se*, commenced this action on March 1, 2019, pursuant to 28 U.S.C. §§ 1346(b) and 2671-2680, *i.e.* the Federal Tort Claims Act ("FTCA"), in the United States District Court for the Eastern District of New York, complaining of treatment he received at the Brooklyn Veterans Affairs ("Brooklyn VA") office. (*See* ECF No. 1, Complaint.) Presently before the court is the government's motion to dismiss plaintiff's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). For the reasons set forth below, the court GRANTS the government's Motion and dismisses this action.

1

## BACKGROUND

On April 29, 2019, defendant filed a letter requesting a pre-motion conference or, in the alternative, that the court set a briefing schedule for defendant's proposed motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 5, Letter motion for pre motion conference.) In response, by letter dated May 27, 2019 and uploaded to ECF on May 31, 2019, plaintiff expressed that he was "baffled and shocked" at the government's perceived "misrepresentation" of his lawsuit, and stated that he was willing to settle the action for "$100 Million USD." (ECF No. 7, Letter dated 5/27/19.) On June 6, 2019, the court granted the government's pre-motion conference request by scheduling a pre-motion conference for June 25, 2019. (Dkt. Order dated 6/6/2019.) On June 25, 2019, the parties appeared for a telephonic pre-motion conference at which the parties agreed that a settlement conference before Magistrate Judge Bloom would be helpful. (Minute Entry dated 6/25/2019.)

On July 19, 2019, the parties appeared for an in-person pre-settlement conference before Judge Bloom. At that conference, Judge Bloom stayed defendant's response to the complaint in order to allow plaintiff time to consider filing an amended complaint. Judge Bloom also scheduled a status conference with the parties for September 17, 2019. On

September 17, 2019, the parties appeared for an in-person status conference.  Plaintiff requested and was granted permission to file an amended complaint, by November 18, 2019, and defendant was ordered to file a letter by November 25, 2019 stating defendant's position with respect to plaintiff's amended complaint.  (Order dated 9/18/2019.)

Plaintiff's Amended Complaint

On September 26, 2019, plaintiff filed an amended complaint.  (ECF No. 14, "Am. Compl.")  The amended complaint consists of 106 pages of disjointed documents, including medical records, shipping receipts, United States Senators' biographies, multiple copies of plaintiff's resume, plaintiff's Phi Delta Phi honor society membership identification, plaintiff's United States Army retiree identification, and other materials.  (*See generally* ECF No. 14.)  Plaintiff's amended complaint also includes the Social Security Administration's decision by ALJ Michael Friedman, which found that plaintiff has been disabled since the onset date of July 20, 2007, due to "intraventricual [sic] and bilateral cerebellar hemorrhage secondary to ruptured arterial venous malformation, resulting in severe cognitive and depressive deficits."  (*Id.* at 29-32.)  The ALJ noted that plaintiff's problems began when he suffered a stroke and underwent brain surgery in June 2007, causing paranoid delusions, memory and concentration problems, and weight loss of

3

40 pounds.  (*Id.* at 29-30.)  Plaintiff was further noted to be "obsessed with Satan," had "written accusatory letters to politicians claiming the military conspired against him, and the Army has caused his disability," and plaintiff "believes he is Jesus Christ (testimony)."  (*Id.*)  According to a Benefits Planning Query report dated September 20, 2019, issued by the Social Security Administration, plaintiff receives Social Security Disability Insurance benefits of $1,048.60 per month.  (*Id.* at 34.)

On April 21, 2009, plaintiff was placed on the United States Army's Temporary Disability Retired List.  (*Id.* at 42.)  On June 24, 2013, plaintiff was removed from the Temporary Disability Retired List due to his permanent physical disability and was permanently retired in his current grade of rank.  (*Id.*)

By letter dated December 20, 2018, the Department of Veterans Affairs ("DVA") denied plaintiff's administrative tort claim, finding that "there was no negligent or wrongful act on the part of an employee of the [DVA] acting within the scope of employment that caused you compensable harm."  (*Id.* at 18.)  The DVA notified plaintiff that he had the right to sue directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680, and that he must initiate the suit within six months of the mailing of the notice.  (*Id.*)  Further, the DVA advised that the proper party defendant is the United States, not the DVA.  (*Id.*)

4

The crux of plaintiff's factual allegations regarding treatment he received at the Brooklyn VA's office is found on pages eight to thirteen of the 106-page amended complaint.[1]

After suffering a hemorrhagic stroke while working as an army doctor, plaintiff left the United States Army and sought medical and psychiatric care from the DVA. (*Id.* at 8-9.) Plaintiff was assigned to a physician, "James J. Peters VAMC," affiliated with the Mount Sinai School of Medicine, who placed plaintiff in rehabilitation therapy. (*Id.* at 9.) Plaintiff sought care from "Mr. Schoenfeld, Mark, LMSW" at the New York Harbor Healthcare System VAMC and an unspecified "myriad of VA doctors." (*Id.*) Plaintiff further alleges that he was assigned to three psychiatrists (Dr. Westmoreland, N., MD, Dr. Maayan, L., MD, and Dr. Silverman, K., DO) as well as two social workers. (*Id.*) Plaintiff alleges, without elaboration, that two of his psychiatrists "behaved in weird manners" and that "[o]ne had an outburst of madness[.]" (*Id.*) Plaintiff also alleges that he called the Veteran Crisis Hotline for help and was admitted to an emergency ward, for a 72-hour observation hold due to his being "in crisis." (*Id.*)

Subsequently, plaintiff called his psychiatrist, Dr. Westmoreland, MD, who completed plaintiff's forms so that he

---

[1] The court assumes the truth of the allegations in the complaint for purposes of this Memorandum and Order.

5

could qualify as a disabled student for purposes of his MBA online studies. (*Id.* at 10.) On or about June 29, 2016, plaintiff received his MBA degree. (*Id.*) Plaintiff notes that he continues to seek treatment with his social worker, Rebecca Mitchell, LMSW. (*Id.*) Plaintiff alleges that he and Ms. Mitchell "spoke briefly" about his upcoming meeting with Magistrate Judge Bloom. Without identifying an act or omission of defendant, plaintiff alleges, "It is my continuation of belief that this was further evidence that a Breach of Duty owed to myself was continuing. [Ms. Mitchell], as well as her colleague, Mr. Ahmed, Foyzul, LCSW-R, breached the duty I am owed with helping my reintegration back into our civilian society."[2] (*Id.* at 11.) Plaintiff also stated, "I remain confused by what I see as an uninterested stance into my mental and physical wellbeing along with a continued inference that I am stupid and do not remember what was verbally told to myself nor how my VA doctors and social workers have acted both verbally, as well as physically, affecting my mental stability. It is insulting and I have shared this feeling with the various VA agents charged with my health care." (*Id.*) Plaintiff also

---

[2] Elsewhere in the amended complaint, plaintiff alleges that Ms. Mitchell and Mr. Foyzul have provided him with excellent care. (*Id.* at 49 ("I am happy to report that I believe myself to be receiving excellent care under the services provided of Ms. Michell . . . and her supervisor, Mr. Foyzul, Ahmed LCSW"); at 20 ("[Ms. Mitchell] has helped and is helping with my re-integration and control of the violent emotions that continue to infect my being.").

6

alleges that he has called the police regarding his mistrust of the Brooklyn VA, but also thinks that "the 911 Police have no jurisdiction on the federal land" on which the Brooklyn VA's office allegedly sits. (*Id*.) Plaintiff has also attempted to contact President Trump and the United States Senators for New York about his distress. (*Id.* at 12.)

Plaintiff alleges that "the constant non recognition of my plight to be heard along with the constant verbal claim that I can't be helped by the various VA agents" contributes to his "severe emotional distress." (*Id.* at 11-12.) Plaintiff further alleges that the care he received at the Brooklyn VA has been "subpar for helping [him] overcome [his] many social and mental adversities," and that "it is wanted that [he] commit suicide." (*Id.* at 12.) Plaintiff seeks $100 million in damages for the Brooklyn VA's negligent care. (*Id.* at 13.)

On October 15, 2019, the government filed a letter informing the court that defendant intended to move to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted. (ECF No. 15, Status Report.) Accordingly, Judge Bloom set a briefing schedule for defendant's proposed motion to dismiss. On February 18, 2020, defendant United States of America ("defendant") filed its motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion"). (ECF Nos. 17, Mot. to

7

Dismiss; 19, Reply in Support of Mot.)  Plaintiff submitted two affidavits in opposition to the government's Motion.  (ECF No. 18, Affidavit/Declaration in Opposition.)

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  A complaint must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is

legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Thus, to survive dismissal, a plaintiff must plead "factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

On a Rule 12(b)(6) motion, matters outside the pleadings are not properly considered. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (internal quotation marks and citation omitted). Fed. R. Civ. P. 12(d); *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (a district court errs when it relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss). Accordingly, the court does not rely on any factual allegations contained in plaintiff's affidavits in opposition to defendant's Rule 12(b)(6) motion to dismiss.

The court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

9

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

   B. **FTCA Liability and Negligent Infliction of Emotional Distress**

Under the FTCA, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees."  *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "[T]o be actionable under [the FTCA], a claim must allege, *inter alia*, that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'"  *Hernandez*, 939 F.3d at 198; *see* 28 U.S.C. § 2674.  Thus, New York state substantive law governs plaintiff's claim based on a negligent infliction of emotional distress ("NIED") theory, which is brought under the FTCA.  *Hernandez*, 939 F.3d at 198; *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996); *Metzen v. United States*, 19 F.3d 795, 807 (2d Cir. 1994).

10

Thus, in the absence of a physical or economic injury, a plaintiff "may establish [a claim for NIED] in one of two ways: (1) the 'bystander theory';[3] or (2) the 'direct duty theory.'" *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Under the direct duty theory, a plaintiff "may recover for NIED by showing a breach of a duty of care resulting directly in emotional harm . . . even though no physical injury occurred, as long as the mental injury is a direct, rather than a consequential, result of the breach, and the claim . . . possess[es] some guarantee of genuineness." *Mortimer v. City of New York*, 15-CV-7186 (KPF), 2018 U.S. Dist. LEXIS 53492, at *79 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks and citation omitted); *see also Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) ("New York recognizes a cause of action where there is 'an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious.'"); *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (finding that the mishandling of a corpse or the transmission of false information

---

[3] "A plaintiff may recover for a purely emotional injury under the 'bystander' theory when: (1) [he] is threatened with physical harm as a result of defendant's negligence; and (2) consequently [he] suffers emotional injury from witnessing the death or serious bodily injury of a member of [his] immediate family." *Mortise*, 102 F.3d at 696. The court agrees with defendant that the bystander theory is inapplicable here because plaintiff does not allege that he witnessed the death or serious bodily injury of a member of his immediate family.

that a parent or child has died to have the propensity to cause extreme emotional distress); *Howard v. Lecher*, 42 N.Y.2d 109, 111-12 (stating that "there may be recovery for [] emotional harm, even in the absence of fear of potential physical injury . . . so long as the psychic injury was genuine, substantial, and proximately caused by the defendant's conduct").

Alternatively, the genuineness requirement of an NIED claim may be met by a showing that defendant's breach of the duty owed to plaintiff unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety.  *J.H.*, 248 F. Supp. 3d at 416; *Mortise*, at 696. "The unreasonable endangerment element . . . involves an objective inquiry turning on whether a plaintiff's physical safety actually was endangered, not a subjective evaluation dependent on the plaintiff's state of mind."  *Carney v. Boston Mkt.*, 18-CV-713 (LGS), 2018 U.S. Dist. LEXIS 214453, at *7 (S.D.N.Y. Dec. 20, 2018).  "New York courts have expressed a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury.'" *Colo. Capital Investments, Inc. v. Owens*, 304 F. App'x 906, 908 (2d Cir. 2008).

## DISCUSSION

At the outset, the court notes that plaintiff's 106-page amended complaint includes approximately 90 pages of irrelevant material, including photographs, (Am. Compl. at 37, 64-70), a marked-up page out of the <u>Warrior Transition Battalion Handbook</u>, (*id.* at 38), biographies of United States Senators Kirsten Gillibrand and Charles Schumer, (*id.* at 52-53), and plaintiff's resume (*id.* at 78-84). None of these miscellaneous materials, which were included in the amended complaint, either individually or in the aggregate, state a claim to relief.

As the Second Circuit has acknowledged, "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also* Fed. R. Civ. P. 12(f) (authorizing a court to strike "any redundant, immaterial, impertinent, or scandalous matter"). Due to plaintiff's *pro se* status, however, the court has extended "special solicitude" and a liberal construction to plaintiff's amended complaint, interpreting it to raise the strongest claims that it suggests. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). Even under a very liberal reading of the *pro se* plaintiff's amended complaint, the court finds that plaintiff has failed to state a claim upon which relief can be granted, for the reasons set forth below. Accordingly, the court

13

dismisses the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's various NIED-related allegations against the Brooklyn VA and the conduct of his psychiatrists and social workers are vague, conclusory, fail to state a claim, and at times, contradict plaintiff's own allegations of negligent or uncaring conduct by Brooklyn VA employees.  For instance, plaintiff's allegations that a Veteran Crisis Hotline agent "did not seem to want to help," that his VA psychiatrist, Dr. Westmoreland, "sounded uninterested and annoyed" when he called her to tell her about his issues, and that two of his three assigned psychiatrists "behaved in weird manners," are conclusory, devoid of facts, and fail to state a cognizable NIED claim.  (ECF No. 14 at 9).  Plaintiff also alleges, in conclusory fashion, that the social workers assigned to him, Rebecca Mitchell and Foyzul Ahmed, "breached the duty [he is] owed with helping [his] reintegration back into [] civilian society" and adopted an "uninterested stance into [his] mental and physical wellbeing."  (ECF No. 14 at 11-12.)

Plaintiff's remaining factual allegations are similarly vague.  He alleges that his doctors and social workers made a "continued inference that [he is] stupid and do[es] not remember what [is] verbally told to [him]" and that they "have acted both verbally, as well as physically, affecting [his]

14

mental stability." (*Id.* at 11.)  Plaintiff alleges that his "plight" has not been recognized and that various VA agents have made the "constant verbal claim that [he] can't be helped." (*Id.* at 12.)  He further alleges, "It is my belief that it is wanted that I commit suicide," without identifying any words or conduct by the Brooklyn VA employees to substantiate his belief. (ECF No. 14 at 12.)  As correctly stated by the government, plaintiff's lack of specificity in alleging facts to support his NIED claim is fatal to his amended complaint.

Further undermining plaintiff's NIED claim are the contradictory allegations in his amended complaint that his social workers' care and treatment have been excellent, and various employees of the Brooklyn VA have told plaintiff *not* to commit suicide.  Specifically, plaintiff notes that his social worker, Ms. Mitchell, "tries to be encouraging by reassuring [me] that she is not trying to have [me] commit Suicide."  (ECF No. 14 at 12.)  Furthermore, plaintiff states in his amended complaint that Ms. Mitchell "has helped and is helping with [his] reintegration and control of the violent emotions that continue to infect [his] being."  (*Id.* at 20.)  Plaintiff also states that he "believe[s] [himself] to be receiving excellent care under the services provided of Ms. Mitchell, Rebecca . . . [and] Mr. Foyzul, Ahmed, LCSW."  (*Id.* at 49.)

15

Given plaintiff's confusing and contradictory allegations, the court does not find that plaintiff's belief, that the Brooklyn VA would like plaintiff to commit self-harm, to be plausible. Further, plaintiff's disjointed and outlandish allegations may be an unfortunate result of plaintiff's established psychological issues, which supported his successful application for Social Security Disability Insurance benefits. As previously noted, plaintiff was determined, by the Social Security Administration, to have been disabled since July 20, 2007 due to cognitive and psychological deficits. Following plaintiff's hemorrhagic stroke and brain surgery in 2007, plaintiff began to suffer from, *inter alia*, paranoid delusions, as well as memory and concentration problems.

Although the court sympathizes with plaintiff's evident emotional distress and frustration, the court finds that plaintiff has failed to allege an actionable NIED claim against defendant. In particular, based on the amended complaint, plaintiff has failed to allege plausible facts that demonstrate defendant's breach of a duty of care or a "genuine" claim of severe mental distress caused by defendant's breach of a duty of care.[4] *Baker*, 239 F.3d at 421; *Howard*, 42 N.Y.2d at 111-12. In addition, plaintiff has failed to rebut defendant's contention

---

[4] Plaintiff appears to confuse the genuineness of his claims with the genuineness of his veteran status and disability. (ECF No. 18, First Pl. Aff. ¶ 10; ECF No. 18-1, Second Pl. Aff. ¶ 9.)

16

that plaintiff has not presented any plausible allegations tying the defendant's alleged conduct to his alleged injury. Further, plaintiff has failed to allege any words or physical conduct, on the part of defendant or its employees that, viewed objectively, caused plaintiff to reasonably fear for his physical safety. *Carney*, 2018 U.S. Dist. LEXIS 214453, at *7. The numerous claims that plaintiff has lodged regarding his treatment by the Brooklyn VA are simply too vague, conclusory or otherwise irrelevant to be sustained in a cause of action.

Further, as defendant correctly noted, "Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) (internal citation and quotations omitted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of the complaint where plaintiff's "attenuated allegations" were "contradicted [] by more specific allegations in the complaint"); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (dismissing claim that is based on "wholly conclusory and inconsistent allegations").

Finally, the court has considered providing plaintiff with a second opportunity to amend his pleadings to cure the existing defects, but has decided that doing so would be futile.

17

*Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (an amendment is futile if it cannot survive a Rule 12(b)(6) motion to dismiss). Because the court finds that further amendments would be futile, and the court has previously given plaintiff an opportunity to amend, the court will not grant plaintiff another opportunity to amend his pleadings.

## CONCLUSION

For the reasons set forth above, the court GRANTS defendant's motion to dismiss the complaint with prejudice. The court certifies pursuant to 28 U.S.C. Section 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment in favor of defendant, close the case, mail a copy of this Memorandum and Order and the judgment to plaintiff and note service on the docket.

**SO ORDERED.**

Dated:   June 15, 2020
         Brooklyn, New York

                                      _____/s/_____
                                      **HON. KIYO A. MATSUMOTO**
                                      United States District Judge
                                      Eastern District of New York